property.  Some kinds of personal property may be readily delivered from hand to hand, and interested persons may rightfully expect that method to be observed.  In other cases, the character of the property and the circumstances of its situation preclude such a delivery; and other indicia of a change of ownership, such as signs, brands and marks are generally accepted as sufficient.  Each case, however, as it arises, should be determined by its own peculiar facts and circumstances.  The contract here contemplated that the newly made lumber should remain for a time at the mills, stacked in a particular way for curing and seasoning before shipment.  That was perhaps necessary, at any rate it was entirely proper, and it cannot be said that whilst so situated it was not lawfully the subject of barter and sale.  The marking of the initials of the name of the purchaser on each pile of lumber where they would most likely be seen was indicative of a status or title which could not have been ignored in good faith by anyone dealing with the prior owner.  The statute was not intended to permit a creditor or subsequent purchaser to close his eyes to the obvious significance of things about him.  If the signs following the other acts of the parties had read, "This lumber belongs to the O. C. & L. Co.," it is doubtful a serious contention would have been made, yet having regard to the situation and condition of the property, the customs of business men adapted thereto, and the letter of the statute and its intent, we think that what was done was the equivalent.

The petition to revise is sustained, and the order of the District Court is vacated, with direction to allow the claim of the petitioner to the property in controversy.

---

NEW YORK & N. J. TRANSP. CO. v. CORNELL STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit.  June 14, 1910.)

No. 254.

TOWAGE (§ 11*)—SINKING OF TOW—LIABILITY OF TUG.

A tug *held* not liable for the sinking of a barge, which filled and sank where she had been left by the tug, after the breaking of the towing bitt, on the ground of negligence in so leaving her; the evidence tending to show that the sinking was due to water which splashed into the hole left by the broken bitt, and could have been prevented by the exercise of proper care by her master.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by the New York & New Jersey Transportation Company against the Cornell Steamboat Company.  Decree for respondent, and libelant appeals.  Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the oral opinion of the District Court, by Chatfield, District Judge:

I am satisfied from the testimony that the question of possible landing at Third street had nothing to do with this matter. The tug Cleary, acting as helper to the tug Terry, which was doing the towing, having properly taken one boat to the dock and come back for the other, was unable, in the ordinary course, to take the second boat to the same dock, and, seeing that the dock could not be made, went on to Newtown creek. The only thing that had anything to do with the sinking of the boat, which has been proven by the libelant, was the breaking of this bitt, which was undoubtedly caused while the boat was going ahead, but which was due to a sudden strain in moving the boat alongside of the other barge. The bitt apparently broke because it was deficient in strength, and that was something that could not be apparent to either the persons towing or to the owners of the barge upon a superficial examination.

Nothing has been shown to indicate any cause for the sinking of the boat, except the splashing of the water into this hole that was made in the boat. According to the evidence the boat did not rest on the bottom until after she had sunk, to a certain extent, at least. The testimony of all the witnesses shows that the only possible cause of the sinking was that water got into the boat, and libelant has shown absolutely nothing to explain how that water got into the boat unless it went through the hole. There is a question as to whether the captain of the tug properly maneuvered the boat when attached as she was by what is called a "strap," and whether after an accident occurred in which the bitt was broken his leaving the boat under those circumstances was negligence; also if there was negligence in leaving the boat under these circumstances, whether that was more than a breach of the contract of towing.

The libelant has proven no negligence so far as the method of leaving the boat is concerned, nor has he shown anything for which the tugboat would be responsible, unless the boat was too heavily loaded, and unless the danger from the hole was so apparent that he should not have left the boat to shift for herself. Aside from those questions, there was no negligence on the part of the tug in leaving the boat to be looked after by her captain; and, if the sinking occurred through the captain's failure to pump her out, that should be considered in reference to the negligence of the tugboat, if any, in leaving her there. I am inclined to think that the captain could have prevented the sinking of the boat if he had taken care of the boat; the only cause shown for the sinking of the boat being the slopping in of the water. It is not the question whether he could have done something at the time he found she was sinking. It is the question whether he could have done something before that by taking proper care of his boat. I am inclined to think that is the point of the case. I am bound to find on the evidence that the boat did not careen until after she was on the bottom. All the witnesses say that the boat did careen, but that was after there was some water in her.

I think I will dismiss the libel, for the reasons that I have stated.

Wray & Callaghan and Stephen Callaghan, for appellant.
Amos Van Etten, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. Decree affirmed, on opinion of the District Court.